IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES JEFFRIES, ) | |
| ) | Case No. 05 C 4249 |
| Plaintiff, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| DUTTON & DUTTON P.C., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

James Jeffries brings this action under the federal Fair Debt Collection Practices Act ("FDCPA"), Illinois Collection Agency Act ("ICAA"), Fair Credit Billing Act ("FBCA"), Fair Credit Reporting Act ("FCRA"), Real Estate Settlement Procedures Act ("RESPA"), and Federal Trade Commission Act ("FTC Act"), based on Defendants' alleged actions related to the home loan issued on the property located at 8347 South Prairie Avenue in Chicago, Illinois. Plaintiff asserts these causes of action against several law offices and their attorneys, the bank who issued him a loan on the property – Fremont Investment and Loan ("Fremont"), the company servicing that loan, and the Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants").

Most of the Defendants have moved to dismiss Plaintiff's Complaint under Rule 4(m), Rule 12(b)(5) and Rule 12(b)(6). Fremont has moved for summary judgment under Rule 56. In his consolidated response to Defendants' motions to dismiss and for summary judgment, Plaintiff alleges claims under several additional statutes – the Illinois Consumer Fraud and Deceptive Practice Act ("ICFA") as well as 18 U.S.C. §§ 241, 242, 1342, 1343 and 42 U.S.C. §§ 1983, 1985.

Given Plaintiff's pro se status, the fact that he served Defendants only days after the 120-day period in Rule 4(m) expired and the potential statute of limitations consequences of dismissing Plaintiff's Complaint, this Court denies Defendants' motions to dismiss under Rule 4(m). As to Defendants' Rule 12(b)(6) motions to dismiss, Plaintiff has met the notice pleading requirements on his FDCPA claims and no other reason exists to dismiss those claims at the Rule 12(b)(6) stage. As to Fremont's motion for summary judgment, Fremont has established through undisputed facts that because it is not a debt collector as defined in the FDCPA, it is entitled to judgment as a matter of law on Plaintiff's FDCPA claim against it. Genuine issues of fact exist, however, on Plaintiff's RESPA claim against Fremont. With these exceptions, Defendants' motions are granted and Plaintiff's remaining claims are dismissed. Plaintiff's motion for judgment as a matter of law under Rule 50(a) is denied.

**Statement of Facts**

On or about July 23, 2004, Fremont made two loans to Jeffries, one secured by a first-lien mortgage and the other by a second-lien mortgage. *See* Fremont's Statement of Undisputed Facts ¶ 3 and Exhibit A. On July 28, 2004, Plaintiff received a letter from Fremont welcoming him as a new loan customer and including payment and customer service information. *See* Plaintiff's Response ("Plf.'s Resp.), Ex. 22f. On August 27, 2004, Plaintiff responded by sending a number of identical letters addressed to Fremont Investment & Loan at various addresses. *See* Plf's Resp., Ex. 23. These letters requested verification of the debt, cited language from the FCRA and FDBPA, and threatened legal action for any of numerous actions listed in the letter as violations of the two Acts. *See* Plf's Resp., Ex. 23. On October 27, 2004, Mr. Jeffries filed a Verified Complaint to Quiet Title against Merscorp. Inc. and Fremont Investment & Loan in Cook County Circuit Cook. *See*

Fremont's Memorandum in Support of Summary Judgment ("Fremont Memo"), Ex. E. In that complaint Plaintiff alleged that he was "not aware of any lawfully valid interest or claim that Defendant(s) has against the Plaintiff or the subject property." *Id.* at ¶ 5. MERS, as nominee for Fremont Investment and Loan, filed a cross-complaint to foreclose mortgage.[1] *See* Plf's Resp., Ex. 13C. The Cook County Circuit Court dismissed Plaintiff's complaint on April 4, 2005. *See* Fremont Memo, Ex. F. Plaintiff's motion to reconsider was denied on November 28, 2005. *Id.* Plaintiff filed his instant suit in federal court on July 22, 2005 and a verified amended complaint on December 8, 2005.

## Federal Rule of Civil Procedure Rule 4(m)

Plaintiff filed his Complaint on July 22, 2005. Rule 4(m) allows this Court to dismiss Plaintiff's Complaint if it is not served upon Defendants within 120 days. *See* Fed. R. Civ. P. 4(m). Plaintiff served most Defendants in this case on November 22 and 23 – 123 and 124 days after the filing of his Complaint. *See* Fremont Memo, Ex. G.

Rule 4(m) allows this Court to extend time for service if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days. Even absent good cause, this Court may grant a plaintiff relief from the consequences of Rule 4(m).[2] On this account, a pro se plaintiff deserves heightened protection against any unjust application of the Rule, *Robinson v. America's Best Contacts & Eyeglasses*, 876 F.2d 596, 598 (7th Cir. 1989), particularly, where Plaintiff's re-filed

---

[1] For a short, informative explanation of MERS see R.K. Arnold, "Real Estate Law, Yes, There is Life on MERS," ABA July/Aug 1997, at 32.

[2] "The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." *See* Advisory Committee Notes to Fed. R. Civ. P. 4(m).

action could be barred by the statute of limitations. *See* Advisory Committee Notes to Fed. R. Civ. P. 4(m) ("Relief may be justified, for example, if the application statute of limitations would bar the refiled action, of if the defendant is evading service or conceals a defect in the attempted service"). Wherefore, this Court denies Defendants' motions to dismiss under Rule 4(m).

### Federal Rules of Civil Procedure 12(b)(6) and 56

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint, and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). In this regard, "[a]ny need to plead facts that, if true, establish each element of a 'cause of action' was abolished by the Rules of Civil Procedure in 1938." *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (stating that "[m]atching facts against legal elements comes later"). Thus, the plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir. 1998). Any conclusions pled, however, must "provide the defendant with at least minimal notice of the claim." *Kyle*, 144 F.3d at 455; *see Sanjuan*, 40 F.3d at 251 ("One pleads a 'claim for relief' by briefly describing the events").

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.(c). In determining whether a genuine issue of fact exists, the Court must view the evidence

and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

For the reasons explained below, all of Plaintiff's causes of action are dismissed against all Defendants except that he may maintain a cause of action under RESPA against Fremont and FDCPA claims against all Defendants except Fremont.[3]

**Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692,** *et seq.* **("FDCPA")**

Plaintiff has pled sufficiently his FDCPA claims. Plaintiff sprinkles just enough facts among his legal conclusions to provide Defendants with notice of the claims against them and to survive the liberal notice pleading standard of the Federal Rules. Several Defendants, however, raise arguments that could preclude any suit or recovery against them under any set of facts alleged. Defendant Steven C. Lindberg argues that as a member of an Illinois limited liability corporation, he cannot be held personally liable unless the LLC's Articles of Incorporation provide for individual member liability. *See* 805 ILCS 180/10-10. Plaintiff attaches an affidavit swearing that the Articles of Organization of Freedman Anselmo Lindberg and Rappe, LLC, do not provide that members are liable for debts, liabilities or obligations of the Company. But Defendant Lindberg has not provided any reason why this Court should consider his affidavit, which is outside of the Complaint, on a motion to dismiss. *See Carter v. Stanton*, 405 U.S. 669, 671 (1972). Similarly, the Court cannot

---

[3] Plaintiff's claims against MERS and Fremont are not barred under the doctrine of res judicata by the state court's dismissal of his action to quiet title. The issues in this action focus on the propriety of the debt collection procedures, rather than the validity of the lien against the property. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952, 957-58 (7th Cir. 1997) (holding that debt collector "should also expect that its obligation to comport with other law in its debt collection practices is not extinguished when a court determines that a debt is valid"). MERS and Fremont, however, are not prevented from arguing in future motions that Plaintiff is collaterally estopped from arguing any issues actually litigated and decided in the state court action.

5

accept CT & T Center's contention that it is a building and not a law firm, a statement contrary to the allegations in the Complaint, as grounds for dismissal under Rule 12(b)(6).

Most of Defendants' arguments though rely solely on Plaintiff's failure to plead specific facts in support of his claims. Defendant Norum, for example, complains that she "should not be made to guess as to what debt Plaintiff is referring." The Court easily can discern from the Complaint that Plaintiff complains about Defendants' actions related to the home mortgage loan issued by Fremont Investment and Loan, such notice is all the Federal Rules require. *See Sanjuan*, 40 F.3d at 251.

A significant number of Plaintiff's allegations involve letters he sent to Defendants to which he allegedly received no response. Section 1692g(b) gives debt collectors two options when they receive requests for validation; debt collectors "may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities." *Jang v. A.M. Miller and Associates*, 122 F.3d 480, 483 (7th Cir. 1997). As to some Defendants, Plaintiff has alleged only that he requested and did not receive validation, not that the Defendant nevertheless continued its collection activities. First, it is not true as certain Defendants argue that failing to respond to an unsolicited letter cannot state a cause of action. Under the FDCPA, if a consumer disputes a debt in writing, then "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtain verification of the debt or a copy of a judgment, . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Second, while Plaintiff ultimately must prove that Defendants continued their collection efforts despite their failure to validate the debt, he need not plead facts supporting every element to survive a motion to dismiss. *See Kyle*, 144 F.3d at 455; *Sanjuan*, 40 F.3d at 251. Given the facts

6

alleged, Defendants have notice of the claims against them and it does not appear beyond doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

As to Fremont's motion for summary judgment, because no genuine issue of material fact exists that Fremont is not a debt collector under FDCPA, but rather a creditor, Fremont is entitled to judgment as a matter of law. The FDCPA applies to debt collectors, not creditors. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000). Fremont extended the credit to Plaintiff creating the debt at issue and it is Fremont to whom the debt is owed. *See* 15 U.S.C. § 1692a(6) (defining a debt collector as any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"); 15 U.S.C. § 1692a(4) (defining creditor as any person who "offers or extends credit creating a debt or to whom a debt is owed"). Thus, because the undisputed material facts show that Fremont is a creditor and not a debt collector, Plaintiff's FDCPA claim against Fremont must be dismissed.

**Real Estate Settlement Procedures Act, 15 U.S.C. § 2601, *et seq.* ("RESPA")**

RESPA requires that a loan servicer respond to a borrower's qualified written request for information related to the servicing of the loan. 12 U.S.C. § 2605(e). Plaintiff alleges that Fremont violated RESPA by continuing to report negatively to credit reporting agencies after Plaintiff sent a request for information to which Fremont did not respond. *See* Compl. ¶¶ 26-27. Section 2605(e)(3) states that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting

agency." 15 U.S.C. § 2605(e)(3). Fremont responds that Plaintiff has not established that he sent a qualified written request or that Fremont is a loan servicer under RESPA.

A qualified written request enables the servicer to identify the name and account of the borrower and includes a statement of sufficient detail regarding the information sought by the borrower. *See* 12 U.S.C. § 2605 (e)(1)(b). Although not pled as a "qualified written request," Plaintiff's letters written to Fremont and attached as exhibits to Plaintiff's response to the motion for summary judgment are seeking verification of the real estate loan issued by Fremont Investment and Loan and therefore constitute a qualified written request. *See* Exhibit 23; *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 868 (N.D. Ill. 2002).

At this point, a genuine issue of facts also exists as to whether Fremont is a loan servicer under RESPA. With certain exclusions not applicable to Fremont, "the term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). Explained further, "[t]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3). In correspondence to Plaintiff, Fremont states that payment should be sent to: "Fremont Investment & Loan, P.O. Box 14242, Orange, CA. 92863." *See* Exhibit 22f. Accordingly, a genuine issue of fact exists as to whether Fremont serviced the loan by receiving scheduled periodic payments from Plaintiff.

Fremont's motion for summary judgment has been filed prior to discovery in this case, perhaps evidence developed in discovery will resolve these disputed facts. *See Jamison-Bey v. Thieret*, 867 F. 2d 1046, 1048 (7th Cir. 1989) (finding summary judgment premature where facts

were not sufficiently developed in pro se case). But given the evidence currently before the Court, genuine issues of fact exist regarding Plaintiff's RESPA claim against Fremont.

**Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")**

"The FCRA places various requirements on consumer credit reporting agencies, furnishers of credit information to consumer credit reporting agencies, and users of consumer credit reports." *See Ayers v. Equifax Information Services*, 2003 WL 23142201, *2-3 (E.D. Va. 2003). Plaintiff alleges that Fremont furnished inaccurate information to credit reporting agencies and failed to investigate his dispute of the debt. Sections 1681n and 1681o allow a consumer to pursue a private right of action for violations of the Act. *See* 15 U.S.C. § 1681n (providing remedies for willful violations of the Act); 15 U.S.C. § 1681o (providing remedies for negligent violations of the Act). Section 1681s-2 is the only section of the FCRA that applies to furnishers of consumer information to credit reporting agencies.

Subsection § 1681s-2(a) requires furnishers of credit information to provide credit reporting agencies with accurate and complete information. Subsections (c) and (d) provide, however, that this requirement may be enforced only by government officials and that consumers are prohibited from bringing a cause of action based upon any failure to comply with subsection (a).[4]

Subsection 1681s-2(b) of the FCRA requires a furnisher of information to conduct an investigation with respect to any disputed consumer information and report the results of that investigation to the credit reporting agency. Some courts have found that subsection (b) creates a

---

[4] 15 U.S.C. § 1681s-2(c) states: "Sections 1681n and 1681o of this title do not apply to any failure to comply with subsection (a) of this section, except as provided in section 1681(c)(1)(B) of this title." Section 1681s(c)(1)(B) lists the remedies available to suits brought by state officers, as opposed to private consumers, for negligent or willful violations of § 1681s-2.
  15 U.S.C. § 1681s-2(d) states: "Subsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section."

private right of action for credit reporting agencies only, not consumers, against furnishers of information. *See Carney v. Experian Info. Solutions*, 57 F. Supp. 2d 496, 502 (W.D. Tenn 1993) (concluding that duties imposed on the furnisher exist solely for the benefit of consumer reporting agencies because it is the consumer reporting agency and not the furnisher of information that faces liability under the FCRA to the consumer for erroneous and inaccurate reporting).

Even those courts that have recognized a private right of action for consumers under subsection (b) have held that "[t]he duties created by subsection (b) arise only after the furnisher receives notice from a consumer reporting agency that a consumer is disputing credit information." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 925 (N.D. Ill. 2000).[5] Thus, assuming that § 1681s-2(b) provides a private right of action, the consumer must register his dispute with the credit reporting agency who then has the responsibility under § 1681i(a)(2) to pass information regarding the dispute on to the information furnisher. *See Nelson v. Chase Manhattan Mortgage Co.*, 282 F.2d 1057, 1060 (9th Cir. 2002) (describing the filter set up by Congress to prevent furnishers of information from being sued by every dissatisfied consumer). Accordingly, the information furnisher's obligation to investigate and report is not triggered when a consumer contacts directly the creditor about a dispute. *See Dumas v. Dovenmuehle Mortgage, Inc.*, 2005 WL 1528262 (N.D. Ill. 2005) (holding that plaintiff must show that the furnisher received notice from a credit reporting agency, not the consumer, that the credit information is disputed). Because Plaintiff has not alleged

---

[5] Once a furnisher has received such notice, it then must:
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.
15 U.S.C. § 1681s-2(b)(1)(A-D).

that he noticed the credit reporting agency of a dispute or that the credit reporting agency notified Fremont about inaccurate or incomplete information, Plaintiff has failed to plead adequately a cause of action under the FCRA and the claim is dismissed.

**Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.* ("FBCA")**

The FBCA and its implementing regulation, "Regulation Z," 12 C.F.R. § 226.1 *et seq.*, create duties in a creditor to communicate with a consumer and resolve billing differences. Specifically, § 1666's resolution procedures are triggered when a consumer sends the creditor notice of a billing error. That notice must be in writing and include the consumer's name and account number, his belief that the statement contains a billing error, the reasons for his belief, and the amount of the error. *See* 15 U.S.C. § 1666(a)(1), (2), and (3). Plaintiff alleges that Fremont violated § 1666 of the FBCA by reporting negatively his information to a credit reporting agency before fulfilling its statutory dispute resolution duties.

While Fremont qualifies as a creditor under the FCBA because it regularly extends credit in connection with sales of property, the FCBA's billing error section, 15 U.S.C. § 1666, applies solely to creditors of open-end credit plans. *See* 15 U.S.C. 1602(f) (stating that the requirements of "chapter 4 [15 USCS §§ 1666, *et seq.*] . . . are by their terms applicable only to creditors offering open-end credit plans"); *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1180 (E.D. Cal. 2005) (holding that "the definition of 'creditor' as used in section 1666 only applies to creditors offering open end credit plans").

> The term "open end credit plan" means a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open

> end credit plan even if credit information is verified from time to time.

15 U.S.C. § 1602(i). There is no allegation that Fremont reasonably contemplated repeated transactions beyond the initial loans provided to Plaintiff. Thus, because Plaintiff's home loan is not an open-end credit plan, his claim related to billing errors under the FCBA must be dismissed.

**Illinois Collection Agency Act, 225 ILCS 425/1, *et seq.* ("ICAA")**

Mentioned only in paragraph 1 of Plaintiff's Complaint, Plaintiff does not cite any specific provisions of the ICAA under which he brings a claim. While the Court construes liberally Plaintiff's pro se complaint, it is not obliged to scour every section of the ICAA searching for a claim that fits the allegations in the Complaint. *See Cook v. Exelon Corp.*, 2002 WL 31133274, *3 (N.D. Ill. 2002); *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir.2001). It is also unfair to Defendants who cannot respond to such an ill-defined cause of action. Beyond Plaintiff's deficient pleading, it is likely that no claim ever could be pled because almost all of the individual and entities defendants in this case are expressly exempt from the ICAA's provisions. *See* 225 ILCS 425/2.03 (stating that the ICAA does not apply to banks, licensed attorneys at law or any person or business under contract with a creditor to notify the creditor's debtors of a debt using only the creditor's name). As such, Plaintiff's ICAA claim is dismissed.

**Federal Trade Commission Act, 15 U.S.C. § 41, *et seq.* ("FTC Act")**

Plaintiff asks the Court to enforce civil penalties under § 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), and to issue a permanent injunction under § 13(b) of the FTC Act, 15 U.S.C. § 53(b). Since both sections are enforceable only by the Federal Trade Commission, these claims for relief are dismissed. *See* 15 U.S.C. § 45(m)(1)(A) ("The Commission may commence a civil action to recover a civil penalty in a district court of the United States"); 15 U.S.C. § 53(b) ("[T]he

Commission . . . may bring suit in a district court of the United States to enjoin any such act or practice").

**Illinois Consumer Fraud and Deceptive Practice Act, 815 ILCS 505 ("ICFA")**

Plaintiff raised the possibility of a claim under ICFA for the first time in response to Defendants' motions to dismiss and for summary judgment. Plaintiff did not allege an ICFA claim in his Complaint. A party cannot raise a new claim, effectively amending the complaint, in an opposition to a motion to dismiss. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that a complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Hodges v. Nat'l Basketball Ass'n*, 1998 WL 26183, * 3 (N.D. Ill. 1998) ("[A] plaintiff may not submit materials in opposition to a motion to dismiss that raise new claims"). Plaintiff's ICFA claim is dismissed.

**Violations of 18 U.S.C. §§ 241, 242; 42 U.S.C. §§ 1983, 1985**

Similar to Plaintiff's ICFA claim, none of these claims based on alleged violations of the Constitution and civil rights laws were not stated in Plaintiff's Complaint. Moreover, 42 U.S.C. § 1985 requires a conspiracy to interfere with a person's civil rights. Plaintiff has not alleged "some racial, or otherwise class-based, invidiously discriminatory animus" for Defendants' actions as necessary under § 1985. *Griffin v. Breckinridge*, 403 U.S. 88, 102 (1971). Section 1983, in turn, requires that Defendants be acting under "color of law," an allegation that cannot be made against the non-government actors here. *See Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 866 (7th Cir. 2004). Finally, 18 U.S.C. §§ 241 and 242 are both criminal statutes under which Plaintiff cannot sue. Accordingly, Plaintiff's claims related to alleged violations of the Constitution or civil rights laws are dismissed.

**18 U.S.C. §§ 1342 (mail fraud) and 1343 (wire fraud)**

Plaintiff's claims alleging mail and wire fraud again must be dismissed because they were not raised in Plaintiff's Complaint and further because they are criminal statutes which provide no cause of action to a private litigant like Plaintiff. *See Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (finding no congressional intent to create a private right of action for mail or wire fraud).

**Conclusion and Order**

Defendants' motions to dismiss pursuant to Rule 4(m) are denied. Defendants' motions to dismiss under Rule 12(b)(6) for failure to state a claim are granted in part and denied in part. Plaintiff has pled sufficient facts to state a cause of action for violations of the FDCPA against all Defendants. The FDCPA claim against Fremont, however, is dismissed because the undisputed facts produced in its motion for summary judgment show that Fremont acted solely as a creditor and not as a debt collector. Fremont's motion for summary judgment on Plaintiff's RESPA claim is denied because genuine issues of fact exist as to whether Fremont is a loan servicer and whether Plaintiff submitted a qualified written request. Excepting these claims, Defendants' Rule 12(b)(6) motions are granted and Plaintiff's remaining claims are dismissed for the reasons stated in this memorandum opinion.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Dated: May 11, 2006